Filed 2/26/26  Browden v. CJ Berry Well Services Management CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LELAND BROWDEN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CJ BERRY WELL SERVICES MANAGEMENT, LLC,<br><br>Defendant and Appellant. | F089756<br><br>(Super. Ct. No. BCV-24-101641)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  T. Mark Smith, Judge.

McGuireWoods and Sabrina A. Beldner and Matthew A. Fitzgerald for Defendant and Appellant.

Setareh Law Group, Shaun Setareh and Thomas Segal for Plaintiff and Respondent.

-ooOoo-

In this action, plaintiff and respondent Leland Browden, "on behalf of himself, all others similarly situated, and the general public," brought a single action under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) against his former employer, defendant and appellant CJ Berry Well Services Management, LLC (CJ Berry). Browden alleges CJ Berry violated multiple Labor Code wage and hour provisions (PAGA claims).

On appeal, CJ Berry challenges the trial court's order (1) denying CJ Berry's motion to compel arbitration of those PAGA claims brought by Browden on his own behalf (individual PAGA claims) and to stay the action in its entirety, including litigation of those PAGA claims brought by Browden on behalf of similarly situated individuals (nonindividual PAGA claims)[1] pending completion of arbitration proceedings, (2) denying its alternative request to stay the entire action due to the pendency of federal court litigation, and (3) denying a concurrently filed, separate motion to stay all proceedings.

We affirm the trial court's order to the extent it denied CJ Berry's motion to compel arbitration. We reverse the court's order to the extent it denied a stay of the litigation and remand the matter with directions.

---

[1] CJ Berry has alternately used the phrases "individual PAGA claims" and "Type A claims" to refer to "individual PAGA claims" as defined in this opinion. Similarly, CJ Berry has alternately used the phrases "nonindividual PAGA claims" and "Type O claims" to refer to "nonindividual PAGA claims" as defined in this opinion. (See *post*.) The alternate phrases "Type A claims" and "Type O claims" were used by this court in *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639 (*Galarsa*).

Herein, we use the phrases "individual PAGA claims" and "nonindividual PAGA claims" to more closely adhere to terminology used in subsequent United States Supreme Court and California Supreme Court case law. (See, e.g., *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 648–649 [142 S.Ct. 1906, 1916–1917, 213 L.Ed.2d 179] (*Viking River*); *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1119, 1122 (*Adolph*).) To the extent the parties or trial court used other phrases to denote these types of claims, we substitute our preferred terminology (using brackets) for those terms when quoting the parties or trial court.

FACTS AND PROCEDURAL BACKGROUND

## I.     Browden's Complaint

On May 14, 2024, Browden, on behalf of himself, all others similarly situated, and the general public, filed a complaint alleging various individual and nonindividual PAGA claims against CJ Berry and Does 1 through 50, for Labor Code violations (PAGA action).

Browden alleges he was a nonexempt employee of CJ Berry from approximately August 19, 2022, to June 8, 2023.  He alleges CJ Berry violated his and other employees' rights under the Labor Code by (1) failing to compensate them for (a) time spent donning uniforms and required safety equipment, (b) time spent waiting in line to clock in for work, (c) work performed at CJ Berry's insistence after they had clocked out from work, and (d) overtime work at the proper overtime hourly rate; (2) failing to provide them with required meal and rest breaks; (3) maintaining policies that resulted in an unlawful forfeiture of their vested vacation pay; (4) failing to reimburse them for work-related expenses; and (5) failing to provide them with wage statements that accurately reflect all hours worked, gross and net wages earned, and applicable hourly rates for work performed.

Browden alleges CJ Berry violated Labor Code sections 201 through 204, 226, subdivision (a), 226.7, 227.3, 510, 512, 1194, 1197, 1198, and 2802.[2]  He further alleges he is an aggrieved employee within the meaning of former section 2699, subdivision (c);[3]

---

[2]     Undesignated statutory references are to the Labor Code.

[3]     References to former section 2699 are as amended by Statutes 2016, chapter 31, section 189, effective June 27, 2016.

Section 2699 was amended in 2024 (Stats. 2024, ch. 44, §1 , eff. July 1, 2024) and again in 2025 (Stats. 2025, ch. 67, § 134, eff. Jan. 1, 2026).  Because, as alleged, Browden filed notice of his claims with the Labor and Workforce Development Agency (LWDA) prior to filing suit on May 14, 2024, amendments made to the statute in 2024 and 2025 do not apply to his lawsuit. (§ 2699, subd. (v)(2) [2016 amendments "shall not apply to a civil action" if required notice to LWDA under section 2699.3, subdivision (a)(1)(A) was filed before June 19, 2024].)

under former section 2699, subdivisions (c) and (g), he is authorized, on his own behalf, and that of CJ Berry's other current and former employees, "to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in … [section] 2699.3"; he has complied with said procedures including, without limitation, the requirement that he provide notice of his claims to the LWDA; 65 days have elapsed since he provided said notice; and LWDA has not notified him that it intends to investigate.

Browden seeks civil and statutory penalties pursuant to former section 2699, subdivisions (a) and (f) for CJ Berry's alleged Labor Code violations, prejudgment interest, costs of suit, and an award of reasonable attorney fees.

## II. CJ Berry Files a Motion to Compel Arbitration and Stay Proceedings, and a Separate Motion to Stay Proceedings

### A. Motion to Compel Arbitration and Stay Proceedings

On December 16, 2024, CJ Berry moved the trial court to compel the arbitration of Browden's individual PAGA claims and all issues of arbitrability pursuant to the Dispute Resolution Policy (DRP) contained in CJ Berry's Employee Handbook and to stay the action including, without limitation, Browden's nonindividual PAGA claims pending completion of arbitration proceedings (motion to compel arbitration). The motion was made pursuant to the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and, "to the extent applicable and not preempted by the FAA," the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.).[4]

---

[4] Section 15 of the DRP provides that the parties agree CJ Berry "is engaged in transactions involving interstate commerce," that arbitration and court proceedings concerning arbitration are subject to and governed by the FAA, and that to the extent state law is applicable under the FAA, "the laws of the State of Texas … will be the applicable state law." Notably, neither party has addressed this choice of law provision nor cited any Texas law on appeal. To the extent Texas law might have any relevance to the issues raised on appeal, the parties have forfeited the argument. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [failure to raise a point on appeal forfeits the point]; *Ace American Ins. Co. v. Walker*

4.

In bringing the motion to compel arbitration, CJ Berry acknowledged the DRP contains provisions (i.e., a portion of § 11 of the DRP)[5] whereby its employees agreed to waive the right to bring any and all PAGA claims (PAGA claim waiver) against CJ Berry in any type of forum. CJ Berry acknowledged the PAGA claim waiver is invalid under United States Supreme Court and California Supreme Court case law and argued the trial court should sever the offending provision(s) pursuant to a severability clause contained in the DRP. It argued that a proper severance should result in the court sending Browden's individual PAGA claims to arbitration.

Ultimately, the trial court would go on to sever a portion of section 11 of the DRP in order to remove the PAGA claim waiver, but the court determined that section 11, even after severing the waiver, operated to prohibit any of Browden's PAGA claims from being sent to arbitration. The court denied CJ Berry's motion to compel arbitration.

### B. *Separate Motion to Stay Proceedings*

CJ Berry also filed a separate, concurrent motion to stay all proceedings, including proceedings related to the motion to compel arbitration (separate stay motion). In it, CJ Berry sought to stay all proceedings "until the parties resolve [Browden's] claims against CJ Berry in the earlier-filed case of *Browden v. CJ Berry Well Services Management, LLC*, Eastern District of California Case No. 1:24-cv-00418-JLT-CDB" (*Browden I*) "and/or until the parties resolve [Browden's] claims against CJ Berry in the later-filed, single-plaintiff discrimination/wrongful termination action …, *Browden v.*

---

(2004) 121 Cal.App.4th 1017, 1027, fn. 2 [appellate court "need not consider an argument not mentioned in the briefs"].)

[5]      The parties and the trial court, when referring to a numbered provision of the DRP, have used either the term "section" or "paragraph" to refer to the provision. The DRP, when referring to a numbered provision of the DRP, has generally (but not consistently) used the term "section" instead of "paragraph" to refer to the provision. For purposes of this opinion, those alternative terms are synonymous when referring to the DRP.

*CJ Berry Well Services Management, LLC*, Eastern District of California Case No. 1:24-cv-01416-JLT-CDB" (*Browden III*).

As part of its separate stay motion, CJ Berry requested the trial court judicially notice (1) the complaint "filed on February 26, 2024 in Kern County Superior Court (Case No. BCV-24-100660)," which was removed to federal court and is pending in *Browden I*; (2) the complaint "filed on October 21, 2024 in Kern County Superior Court (Case No. BCV-24-103581," which was removed to federal court and is pending in *Browden III*; and (3) the moving papers filed on July 22, 2024, in support of a motion to compel arbitration of claims filed in *Browden I* (federal motion to compel arbitration), the opposition to the motion filed on August 12, 2024, and the reply in support of the motion filed on August 26, 2024.

The claims asserted in *Browden I* and those asserted in the case before us appear to contain similar allegations of Labor Code wage and hour law violations, and we conclude (as did the trial court) that overlapping issues are presented in the two cases. Conversely, the issues in *Browden III* do not appear to overlap issues presented in this matter.[6]

Browden opposed the separate stay motion. Ultimately, the trial court declined to stay proceedings as part of the order now on appeal.

### III. Facts Alleged in Support of the Motion to Compel Arbitration

#### A. Factual Averments

In support of its motion to compel arbitration, CJ Berry submitted declarations containing numerous factual averments and authenticating an attached copy of the DRP

---

[6] In *Browden III*, Browden has alleged causes of action for (1) retaliation for reporting a qualified disability (Gov. Code, § 12940, subd. (h)), (2) failure to take reasonable steps to prevent discrimination and harassment (Gov. Code, § 12940, subd. (k)), (3) wrongful termination in violation of public policy, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) violation of Business and Professions Code section 17200 et seq. (based on the alleged retaliation and wrongful termination).

from its Employee Handbook. Browden did not, and does not, dispute any of CJ Berry's factual averments and has not submitted additional facts in opposition to the motion to compel arbitration. We summarize those facts below.

CJ Berry is a Delaware corporation with its principal place of business, principal executive offices, and corporate headquarters in the state of Texas. The majority of CJ Berry's officers reside in Texas from where "they direct, control and coordinate" most of its activities. CJ Berry began its operations in November 2021, and, since that time, "has exclusively operated within the State of California." CJ Berry provides services in California "to companies that operate nationally" and "acquire[s] and purchase[s] equipment, supplies, and materials from companies located outside California, or that were manufactured at locations outside California."

Browden worked for CJ Berry from August 29, 2022, until his employment was terminated on June 8, 2023. During his employment with CJ Berry, Browden worked exclusively within the State of California as a flatbed truck driver and, occasionally, as a vacuum truck driver.

Browden acknowledged his receipt and review of CJ Berry's Employee Handbook shortly after commencing employment with CJ Berry and on subsequent occasions. "The DRP is not a condition of employment. Rather, CJ Berry employees are permitted to opt-out of the DRP .…" CJ Berry has no record of Browden choosing to opt out of the DRP.

The DRP contains 24 numbered provisions. We set forth provisions and excerpts of provisions from the DRP that are most relevant to our analysis. The first section of the DRP reads as follows:

> "1. **DRP Purpose.** This DRP is aimed at resolving Covered Disputes (defined in Section 3) quickly, fairly and in a mutually beneficial way. It is not intended to replace other informal [CJ Berry] provided resources available for the resolution of workplace issue. However, mandatory final and binding individual arbitration in accordance with the terms of this DRP is the sole and exclusive remedy for any formal resolution of all unresolved Covered Disputes."

The DRP contains a definition of the types of disputes covered by the DRP (Covered Disputes). It provides, in relevant part:

> "**3. <u>Disputes Covered By The DRP</u>.** This DRP applies only to "Covered Disputes," which are defined to mean any and all claims, causes of action, or other disputes or controversies that already occurred, now exist, or arise in the future between You and [CJ Berry] and/or between Covered Individuals.…
>
> "Except as stated in Section 4 of this DRP, Covered Disputes include those arising out of or related to: (i) a Covered Individual's employment with or work for [CJ Berry], applying for or being denied such employment or work, the termination of such employment or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues) .…
>
> "Subject to the provisions of Section 11 of this DRP, Covered Disputes include those that arose or accrued before or after becoming bound by this DRP, including those asserted in a previously-threatened or filed and/or currently pending Representative Action (as defined in Section 11) in which either no class or collective certification has been granted by the court as of the date of becoming bound by this DRP, or You have elected to not join as a party to the Representative Action. Covered Disputes also encompass those that arise because a Covered Individual's employment with or work for [CJ Berry] terminates or his/her application for employment or work is denied. Covered Disputes must only be heard and decided by the appointed arbitrator. [Fn. omitted.]"

The DRP defines "Covered Individuals" to include any "individual who has applied for employment with [CJ Berry] or who is or was employed by [CJ Berry]."

Section 4 of the DRP excludes certain types of disputes from Covered Disputes including, without limitation, claims for state workers' compensation benefits, unemployment insurance, disability insurance, and other government-administered health and welfare benefits.

Section 7 of the DRP states: "The Parties waive any and all rights to a judge or jury trial and/or administrative hearing of their Covered Disputes and agree to resolve such disputes only through final and binding individual arbitration under [the] DRP."

Section 11 of the DRP, which plays a dominant role in our consideration of the issues on appeal, reads in full:

"**11.** **Class, Collective and Representative Actions Are Not Permitted.** 'Representative Action' means any type of (i) class action or arbitration, (ii) collective action or arbitration (including without limitation pursuant to the Fair Labor Standards Act ['FLSA']), (iii) private attorney general action or arbitration, (iv) joined, consolidated, or coordinated actions or arbitrations, and/or (v) claims or disputes brought in a representative capacity on behalf of the general public, of any governmental entity, of other Covered Individuals or [CJ Berry], or of other persons or entities alleged to be similarly situated or aggrieved including, without limitation, representative claims under [PAGA]. Under this DRP, Covered Individuals and [CJ Berry] (a) cannot bring or participate in a Representative Action in connection with any Covered Disputes, (b) have no agreement, right, or authority for any Covered Disputes to be heard, arbitrated, or decided as any type of Representative Action, and (c) expressly waive any and all rights to bring or participate in any type of Representative Action to resolve, decide, or adjudicate any Covered Disputes and are prohibited from doing so.

"The appointed arbitrator will have no power, authority, or jurisdiction to: (I) hear or decide any Covered Disputes as any type of Representative Action; (II) award any type of remedy or relief for any Covered Disputes in connection with any type of Representative Action; (III) join or consolidate in the arbitration any Covered Disputes brought by or against any other Covered Individuals or [CJ Berry]; (IV) award injunctive relief other than on an individual basis in favor of the Party asserting the Covered Disputes, and then only to the extent permitted by applicable law and necessary to provide relief warranted by the Covered Disputes; or (V) interpret, apply, enforce, or modify this DRP in any manner that would empower or authorize the arbitrator to do any of the foregoing." (First bracketed insertion in original.)

Section 21 of the DRP speaks to the issue of severability of invalid or unenforceable provisions. It reads in full:

"**21.** **Severability of Invalid or Unenforceable Provisions and Stay of Non-Arbitrable Claims.** If any provision of this DRP is held or ruled to be invalid or unenforceable under applicable law including, without limitation, any portion of Paragraph 11 pertaining to Representative Actions, then any such invalid or unenforceable provision will be severed

9.

from this DRP, and the remainder of the DRP will not be affected and shall otherwise be enforced to give broad effect to the Parties' agreement to participate and resolve Covered Disputes in individual arbitration.  In the event that a Party asserts any claims that are deemed not arbitrable by federal law or a court of competent jurisdiction ('Non-Arbitrable Claims') while at the same time asserting claims against the other Party that are Covered Disputes subject to the DRP, the Parties consent to and agree that the litigation of the Non-Arbitrable Claims in any state or federal judicial forum shall be stayed pending resolution of the Covered Disputes that are otherwise subject to the DRP."

**B.      *Browden's Opposition to the Motion to Compel Arbitration and the Separate Stay Motion***

Browden opposed CJ Berry's motions, arguing, among other things, that the express language of the arbitration agreement bars any and all PAGA claims from being heard in arbitration.  Browden agreed that the PAGA claim waiver was invalid and unenforceable but argued severing the invalid provision should have no impact on valid provisions of the DRP and the provision prohibiting any and all PAGA claims from being arbitrated is a valid provision.

**C.      *The Court's Ruling on the Motions***

On April 30, 2025, the trial court denied the motion to compel arbitration and the separate stay motion.  With regard to the motion to compel arbitration, the court agreed with the parties' mutual position that (1) the FAA applies to the DRP's arbitration provisions and (2) the PAGA claim waiver is invalid and unenforceable, citing *Viking River, supra*, 596 U.S. at p. 662; *Galarsa, supra*, 88 Cal.App.5th at p. 649, and *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383, 574 (*Iskanian*), overruled on an unrelated issue in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 and abrogated in part on a different issue in *Viking River*, at pages 640–641.

In its ruling, the trial court stated, "Paragraph 21 of [CJ Berry's] Employee Handbook … states that invalid or unenforceable provisions of the DRP, 'including,

10.

without limitation, any portion of Paragraph 11 pertaining to Representative Actions,' [as defined in the DRP,] 'will be severed from this DRP, and the remainder of the DRP will not be affected and shall otherwise be enforced'. However, severing the unenforceable provisions of the DRP does not preserve [CJ Berry's] right to compel arbitration.

"Severing the offending portions of Paragraphs 3 and 11 leaves the remainder of Paragraph 3 as applicable only to any individual wage or hour claims and are still subject to arbitration. The DRP's definition of 'Representative Action' includes disputes on behalf of a governmental entity. Accordingly, under the DRP's own definitions, there are no individual claims in this PAGA action, and therefore [Browden's] individual claims are not subject to arbitration. Even if [Browden's] representative wage and hour claims survive the severance (which they do not) under [Paragraph] 11 the arbitrator has 'no power, authority, or jurisdiction to: 'hear or decide any Covered Disputes as any type of Representative Action'. Therefore, even if the PAGA claims were divisible into individual [PAGA claims] and [nonindividual PAGA] claims, neither are subject to arbitration. After severance, under the DRP, the only place for a 'Representative Action' to be heard is in Court."

## IV.  Appeal

On May 1, 2025, Browden served CJ Berry with notice that the trial court had entered its order denying CJ Berry's motions. On May 5, 2025, CJ Berry timely filed a notice of appeal pursuant to Code of Civil Procedure section 1294, subdivision (a).

## DISCUSSION

## I.  The Parties' Contentions on Appeal

On appeal, CJ Berry contends the trial court erred by refusing to compel arbitration of Browden's individual PAGA claims. It argues the arbitration agreement "broadly calls for individual arbitration of disputes, and also waives PAGA claims entirely" and contends the court "should have severed the PAGA [claim] waiver, then applied what was left of the arbitration agreement to send Browden's individual PAGA

11.

claims to arbitration and stay the nonindividual PAGA claims." In short, CJ Berry contends the trial court "mistakenly sever[ed] the wrong parts of the arbitration agreement" and, in doing so, altered the DRP's purpose "of maximizing individual arbitration of disputes between the parties." In response, Browden contends the DRP expressly prohibits arbitrating Browden's PAGA claims and the prohibition is enforceable.

In the alternative, CJ Berry argues that, if the trial court correctly declined to order the arbitration of Browden's individual PAGA claims, it should have stayed the entire PAGA action until *Browden I* is resolved.[7] Browden contends that the trial court's order denying CJ Berry's request for a stay is not appealable, but in the event this court concludes otherwise, the trial court correctly denied the request for a stay.

## II. The Trial Court Did Not Err in Declining to Send Browden's Individual PAGA Claims to Arbitration

### A. *Standard of Review*

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 18.) De novo review is also appropriate where, as here, the relevant facts are not in dispute. (*Ibid.*; *Brown v. Ralphs Grocery Co.* (2011) 197 CalApp.4th 489, 497 [" ' " ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court." ' " ' "].)

---

[7] In its separate stay motion, CJ Berry advised that Browden stipulated to a stay of *Browden III* pending the outcome of CJ Berry's federal motion to compel arbitration of claims raised in *Browden I*.

Browden argues, however, CJ Berry "is challenging decisions the trial court made about whether to sever clauses from the arbitration agreement, and those decisions are reviewed under an abuse of discretions standard," citing, without further discussion, *Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 283. CJ Berry counters by arguing, "[A]buse-of-discretion review is limited to the question of *whether to sever* versus invalidate the entire agreement," citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 (*Armendariz*), and the instant appeal "is not about *whether* to sever"—it "is about *how* to sever," which "implicates pure contract interpretation issues, such as whether the trial court's severance erased valid, enforceable provisions of the DRP and contravened the DRP's stated purpose and structure."

In our view, this appeal potentially implicates both questions—i.e., whether the trial court abused its discretion in engaging in a severing process to remove a provision both sides acknowledge is against public policy and, if the court did not abuse its discretion, whether the court severed appropriate language from the provision, which would implicate contract interpretation issues and is subject to de novo review.

### B. PAGA and Related Case Law

Former section 2699, subdivision (a), applicable here, provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." An "aggrieved employee" is defined to mean "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (Former § 2699, subd. (c).)

13.

"Before 2004, the [LWDA] was responsible for collecting civil penalties for labor law violations. The Legislature found, however, that the LWDA lacked sufficient resources to keep pace with the sheer number and gravity of offenses. As a solution, PAGA was enacted to empower aggrieved employees to act as private attorneys general to prosecute and collect civil penalties on the state's behalf. [Citation.] [¶] PAGA does not create substantive rights. It ' " 'is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies.' " ' " (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 127.)

*Iskanian*

In *Iskanian*, our Supreme Court concluded, "[A]n arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian, supra*, 59 Cal.4th at p. 360.)[8] Our Supreme Court further concluded the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract. (*Iskanian*, at p. 360.) The court reasoned, "[T]he rule against PAGA waivers does not frustrate the FAA's objectives because, as explained below, the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [LWDA]." (*Id.* at p. 384.) "[E]*very* PAGA action,

---

[8]    In concluding such waivers are against public policy, the *Iskanian* court wrote: "The unwaivability of certain statutory rights 'derives from two statutes that are themselves derived from public policy. First, Civil Code section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." "Agreements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced." [Citation.] Second, Civil Code section 3513 states, "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." ' " (*Iskanian, supra*, 59 Cal.4th at pp. 382–383, second bracketed insertion added.)

14.

whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well is a representative action on behalf of the state." (*Id.* at p. 387.) "[A] PAGA litigant's status as 'the proxy or agent' of the state [citation] … reflects a PAGA litigant's substantive role in enforcing our labor laws on behalf of state law enforcement agencies." (*Id.* at p. 388.) The court clarified, "Of course, any employee is free to forgo the option of pursuing a PAGA action. But it is against public policy for an employment agreement to deprive employees of this option altogether, before any dispute arises." (*Id.* at p. 387; see *Kec v. Superior Court* (2020) 51 Cal.App.5th 972, 974 ["a predispute contractual waiver of claims under [PAGA] is invalid"].)

>   *Viking River*

In *Viking River*, the United States Supreme Court considered two of the holdings in *Iskanian*: (1) "whether the [FAA] [citation] preempts a rule of California law that invalidates contractual waivers of the right to assert representative claims under [PAGA]" (*Viking River*, *supra*, 596 U.S. at p. 643); and (2) whether the FAA preempts the rule announced in *Iskanian* "that PAGA claims cannot be split into arbitrable 'individual' claims and nonarbitrable 'representative' claims" (*id*., at p. 640; see *id.* at pp. 649, 662).

The United States Supreme Court held, "The FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 596 U.S. at pp. 640, 662.) However, the court clarified that "[u]nder this Court's holding, *Iskanian*'s prohibition on wholesale waivers of PAGA claims is not preempted by the FAA." (*Id.* at p. 642.)

Here, both parties acknowledge that section 11 of the DRP contains a wholesale waiver of PAGA claims, and that the waiver is unenforceable under the ruling announced in *Iskanian*. CJ Berry, however, relies on *Viking River*'s holding that the PAGA action may be split into individual and nonindividual PAGA claims and argues the trial court

15.

should have split Browden's PAGA claims into those components and sent Browden's individual PAGA claims to arbitration. CJ Berry argues the court "should have followed the framework set out by this Court in *Galarsa*," which involved PAGA claims and which CJ Berry contends involved "a substantially similar arbitration agreement."

### *Galarsa*

In *Galarsa*, this court concluded that neither *Viking River* nor the FAA invalidated the holding in *Iskanian* that a "wholesale waiver of PAGA claims" was unenforceable and that said rule "is not preempted by the FAA." (*Galarsa, supra*, 88 Cal.App.5th at p. 649.) This court further concluded the severability clause at issue "allow[ed] the unenforceable waiver provision to be stricken from the arbitration agreement" and, once that provision was stricken, the remaining provisions of the agreement required arbitration of the plaintiff's individual PAGA claims. (*Id.* at pp. 644.) This court also concluded that once the plaintiff's PAGA claim was divided into its individual and nonindividual components, with the former being sent to arbitration, the plaintiff could continue to pursue her nonindividual PAGA claims in court—rejecting *Viking River*'s determination that, under California law, such nonindividual PAGA claims would need to be dismissed. (*Galarsa*, at pp. 653–655; see *Viking River, supra*, 596 U.S. at p. 663.) The latter holding in *Galarsa* was subsequently confirmed by our Supreme Court. (*Adolph, supra*, 14 Cal.5th at p. 1123.) Consequently, assuming no other applicable prohibitions and no adverse standing determinations,[9] a plaintiff whose PAGA claim is split into individual and nonindividual PAGA claims in order to send the plaintiff's

---

[9] The *Adolph* court acknowledged, however, that the trial court had "discretion to stay the non-individual [PAGA] claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure" and that "[i]f the arbitrator determines that [the plaintiff] is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and [the plaintiff] could no longer prosecute his non-individual [PAGA] claims due to lack of standing." (*Adolph, supra*, 14 Cal.5th at pp. 1123, 1124.)

16.

individual PAGA claims to arbitration will still retain the right to pursue nonindividual PAGA claims in a court of law.  (*Adolph*, at pp. 1123, 1124.)

### C. *Severability Principles*

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement."  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)  The FAA provides in part:  "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract .…" (9 U.S.C. § 2.)  Similarly, "[t]he [CAA] [citation] expresses a ' " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " ' [Citation.]  A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.)"  (*Ramirez, supra*, 16 Cal.5th at p. 492.)  Terms within an arbitration agreement that are illegal or contrary to public policy provide such grounds.  (*Armendariz, supra*, 24 Cal.4th at pp. 110, 123–124.)

As mentioned, the parties agree that a wholesale waiver of PAGA claims in any forum is contrary to California public policy and that the PAGA claim waiver in the DRP violates our state's public policy.  We agree on both points.  (See *Viking River, supra*, 596 U.S. at p. 642 ["*Iskanian*'s prohibition on wholesale waivers of PAGA claims is not preempted by the FAA."]; *Iskanian, supra*, 59 Cal.4th at pp. 383, 384; *Galarsa, supra*, 88 Cal.App.5th at p. 644.)

"Courts are to look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such

severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.) "The 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.' " (*Ramirez, supra*, 16 Cal.5th at p. 513.) Here, the central purpose of the arbitration agreement (to send qualifying claims to arbitration) remains valid notwithstanding the inclusion of the invalid PAGA claim waiver.

The severance provision in the DRP specifies that "invalid or unenforceable provision[s] will be severed … and the remainder of the DRP will not be affected and shall otherwise be enforced to give broad effect to the Parties' agreement to participate and resolve Covered Disputes in individual arbitration." This is an "expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." (*Ramirez, supra*, 16 Cal.5th at p. 517.)

Both parties seemingly agree the trial court was within its discretion to sever the offending provision(s) from the DRP. However, as mentioned, CJ Berry contends the court extirpated the wrong part of section 11 of the DRP and, in doing so, caused the DRP to prohibit arbitration of Browden's individual PAGA claims, contrary to its overall intent.

The California Supreme Court identified two statutes that provide courts with the authority to sever provisions of a contract that are deemed illegal, unconscionable, or against public policy. The first, Civil Code section 1670.5, provides in relevant part: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a); *Ramirez, supra*, 16 Cal.5th at pp. 513, 514.) Second, Civil Code section 1599 provides: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."

18.

Our Supreme Court has also recognized at least " '[t]wo reasons for severing or restricting illegal terms rather than voiding the entire contract.' [Citation.] 'The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract.' [Citation.] Second, 'the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme.' [Citation.] We stated that the 'overarching inquiry is whether " 'the interests of justice … would be furthered' " by severance.' " (*Ramirez, supra*, 16 Cal.5th at p. 514, first bracketed insertion in original.) A limitation on the power of courts to so reform an arbitration agreement is the principal that a court may not reform a contract by augmentation. (*Id.* at p. 515.)

### D.     Analysis

"[A] party may not be compelled under the FAA to submit to … arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684 [130 S.Ct. 1758, 1775, 176 L.Ed.2d 605] (*Stolt-Neilsen*); see *Viking River, supra*, 596 U.S. at p. 659 [recognizing "the fundamental principle that 'arbitration is a matter of consent' "]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["arbitration under the FAA 'is a matter of consent, not coercion' "].)

The DRP provides a broad definition of "Covered Disputes" that are subject to the DRP. Subject to certain exceptions not applicable here, Covered Disputes include, without limitation, "those arising out of or related to: (i) [Browden's] employment with or work for [CJ Berry], applying for or being denied such employment or work, the termination of such employment or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues)." Browden's individual PAGA claims fall within the scope of the above language. The DRP continues: "*Subject to the provisions of Section 11* of this DRP, Covered Disputes

19.

include those that arose or accrued before or after becoming bound by this DRP .…" (Italics added.)

Section 11 of the DRP begins by defining "Representative Actions." Representative Actions include, without limitation, "any type of … (iii) private attorney general action or arbitration, … and/or (v) claims or disputes brought in a representative capacity on behalf of the general public, of any governmental entity, of other Covered Individuals or [CJ Berry], or of other persons or entities alleged to be similarly situated or aggrieved including, without limitation, representative claims under [PAGA]."

Browden's PAGA action is a private attorney general action—with Browden serving "as 'the proxy or agent' of the state." (*Iskanian, supra*, 59 Cal.4th at p. 388.)  A PAGA litigant has a "substantive role in enforcing our labor laws on behalf of state law enforcement agencies." (*Iskanian*, at p. 388.)  Both of Browden's individual and nonindividual PAGA claim components are brought in a representative capacity on behalf of the general public, on behalf of the state, and, in the case of his nonindividual PAGA claims, on behalf of similarly situated current and former employees of CJ Berry. Thus, Browden's PAGA action is a "Representative Action" under subsections (iii) and (v) of section 11 of the DRP.

CJ Berry does not dispute that Browden's PAGA claims fall within the definition of a "Representative Action."  In fact, CJ Berry's appeal is premised on its contention that the trial court could, and should, have simply stricken the two definitions in subsections (iii) and (v) of section 11 in order to determine that Browden's individual PAGA claims should be sent to arbitration.  According to CJ Berry, this "method of severance would do no violence to the many lawful goals of the DRP."  We disagree.

Section 11 of the DRP expressly states:  "Under this DRP, Covered Individuals and [CJ Berry] … (b) have no agreement, right, or authority for any Covered Disputes to be heard, arbitrated or decided as any type of Representative Action .…"  "[A] party may not be compelled under the FAA to submit to … arbitration unless there is a contractual

basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp, supra*, 559 U.S. at p. 684.) If there is "no agreement, right, or authority for any Covered Disputes to be heard, arbitrated or decided as any type of Representative Action" (*ibid.*), then there is no agreement to arbitrate Browden's individual or nonindividual PAGA claims. Browden's PAGA action is a Representative Action under both section 11 of the DRP and under California law.

Section 11 of the DRP goes further in disavowing any right of CJ Berry to compel the arbitration of Browden's individual and nonindividual PAGA claims. It expressly divests any appointed arbitrator of any "power, authority, or jurisdiction to … hear or decide any Covered Disputes as any type of Representative Action" or to award relief in connection therewith.

CJ Berry contends the trial court should have stricken parts of the definition of Representative Action—such that Browden's PAGA action would no longer be considered a Representative Action as defined in the DRP. It is true that this would have the effect desired by CJ Berry of eliminating the public policy violation that resulted from Browden's wholesale waiver of PAGA claims. However, there is nothing illegal or unenforceable about provisions in an arbitration agreement that prohibit certain claims from being arbitrated. CJ Berry's preferred method of severance would have the added effect of removing the parties' acknowledgment that they had not agreed to arbitrate any such claims and would remove his PAGA claims from the provision that expressly divested an appointed arbitrator of jurisdiction to hear, decide, and order relief in connection with such claims.

If we were to sever and interpret section 11 of the DRP as urged by CJ Berry, the effect would be to coerce Browden into arbitrating claims which he did not agree to arbitrate. This we may not do. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra*, 55 Cal.4th at p. 236 ["arbitration under the FAA 'is a matter of consent, not coercion' "].) The purposes of severance would be further

21.

undermined (1) by providing CJ Berry with an undeserved benefit and causing Browden to suffer undeserved detriment—i.e., forcing Browden's individual PAGA claims into arbitration despite clear statements in section 11 of the DRP that there is no agreement to arbitrate those claims and that the arbitrator has no jurisdiction to hear and decide such matters, and (2) by failing to conserve the valid parts of the parties' agreement and, instead, altering it into something the parties did not intend.  (See *Ramirez, supra*, 16 Cal.5th at p. 514.)  The interests of justice would not be served by such an undertaking.  (See *ibid.*)

Although severance of invalid provisions is authorized both under section 21 of the DRP and under California law in order to eliminate invalid contract provisions and to give effect to the remaining valid provisions (*Ramirez, supra*, 16 Cal.5th at p. 514; Civ. Code, §§ 1599, 1670.5),[10] " '[t]here is … "no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate." ' "  (*Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 912.)

### E.     CJ Berry's Remaining Contention Regarding Severance

CJ Berry contends the trial court severed the following language (shown below using a word processing strikethrough feature) from section 11 of the DRP, that the severance is overbroad, and that the "revision improperly struck a valid waiver of non-PAGA claims" from the provision.

---

[10]     Although the parties have forfeited any argument that Texas law should be applied on appeal, Texas law appears largely consistent with California law in allowing courts discretion to sever contract provisions that are deemed illegal, unconscionable, or against public policy.  (*In re Kasschau* (Tex. Ct.App. 1999) 11 S.W.3d 305, 313 ["The doctrine of severability … applies in circumstances in which the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal.  [Citation.]  In such a case, the court may sever the invalid provision and uphold the valid portion, provided the invalid provision does not constitute the main or essential purpose of the agreement.  [Citation.]  Severability of the contract is determined by the intent of the parties as evidenced by the language in the contract."].)

"**11.  Class, Collective and Representative Actions Are Not Permitted.**
**[1]** 'Representative Action' means any type of (i) class action or arbitration, (ii) collective action or arbitration (including without limitation pursuant to the Fair Labor Standards Act ['FLSA']), (iii) private attorney general action or arbitration, (iv) joined, consolidated, or coordinated actions or arbitrations, and/or (v) claims or disputes brought in a representative capacity on behalf of the general public, of any governmental entity, of other Covered Individuals or [CJ Berry], or of other persons or entities alleged to be similarly situated or aggrieved including, without limitation, representative claims under [PAGA].  ~~**[2]**Under this DRP, Covered Individuals and [CJ Berry] (a) cannot bring or participate in a Representative Action in connection with any Covered Disputes, (b) have no agreement, right, or authority for any Covered Disputes to be heard, arbitrated, or decided as any type of Representative Action, and (c) expressly waive any and all rights to bring or participate in any type of Representative Action to resolve, decide, or adjudicate any Covered Disputes and are prohibited from doing so.~~

"**[3]** The appointed arbitrator will have no power, authority, or jurisdiction to:  (I) hear or decide any Covered Disputes as any type of Representative Action; (II) award any type of remedy or relief for any Covered Disputes in connection with any type of Representative Action; (III) join or consolidate in the arbitration any Covered Disputes brought by or against any other Covered Individuals or [CJ Berry]; (IV) award injunctive relief other than on an individual basis in favor of the Party asserting the Covered Disputes, and then only to the extent permitted by applicable law and necessary to provide relief warranted by the Covered Disputes; or (V) interpret, apply, enforce, or modify this DRP in any manner that would empower or authorize the arbitrator to do any of the foregoing."

The trial court did not identify the particular language that it was severing from Section 11 of the DRP.  It merely wrote:  "Severing the offending portions of Paragraphs 3 and 11 leaves the remainder of Paragraph 3 as applicable only to any individual wage or hour claims and are still subject to arbitration.  The DRP's definition of 'Representative Action' includes disputes on behalf of a governmental entity. Accordingly, under the DRP's own definitions, there are no individual claims in this PAGA action, and therefore [Browden]'s individual claims are not subject to arbitration." The court further noted that "under [Paragraph] 11 the arbitrator has 'no power, authority, or jurisdiction to:  'hear or decide any Covered Disputes as any type of Representative

23.

Action.'  Therefore, even if the PAGA claims were divisible into individual and representative claims, neither are subject to arbitration."  As discussed, we agree with the trial court's ultimate determination that Browden's claims are not subject to arbitration.

Arguably, CJ Berry's overbreadth argument is a strawman as there are no non-PAGA claims at issue and no party has argued that the trial court's determination will have effect beyond the claims raised in the instant litigation.  Notwithstanding, a court need not actually "sever" violative language from an agreement in order to give effect to the valid portions of the agreement.  In the context of Civil Code section 1599, a court may " 'sever[] *or restrict*[] illegal terms rather than voiding the entire contract.' " (*Ramirez, supra*, 16 Cal.5th at p. 514, quoting *Armendariz, supra*, 24 Cal.4th at p. 123, italics added.)  Similarly, subdivision (a) of Civil Code section 1670.5 provides that a court may merely "limit the application of any unconscionable clause as to avoid any unconscionable result."

It is arguable that no act of severing (i.e., striking) language from the DRP will result in eliminating only the PAGA claim waiver contained in the DRP without affecting other valid provisions of the DRP.  Accordingly, we interpret the trial court's discussion with regard to severance merely as a determination by the court that it will limit or restrict the DRP from giving effect to the invalid PAGA claim waiver.  Consequently, we conclude CJ Berry has not demonstrated prejudicial error with regard to the trial court's determination that Browden's PAGA claims are not subject to arbitration and affirm the court's determination in that regard.

## III.    The Litigation Should Be Stayed

### A.    *Appealability*

Browden contends the trial court's stay order is not appealable and argues *Oiye v. Fox* (2012) 211 Cal.App.4th 1036 is instructive.  In *Oiye*, the trial court entered an order granting the plaintiff's requests for a preliminary injunction and to compel discovery from the defendant.  (*Id.* at pp. 1046–1047.)  The *Oiye* court determined the portion of the

order granting injunctive relief was appealable but the portion granting discovery was not appealable. (*Id.* at p. 1060.) The court explained: "In an authorized appeal, an appellate court may review 'any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from.' " (*Ibid.*, quoting Code Civ. Proc., § 906.) The court concluded the discovery order was "unrelated to the merits of the injunction and does not necessarily affect it." (*Oiye*, at p. 1060.) An analogous statute to that quoted in *Oiye* provides that, on appeal from an order denying a petition to compel arbitration, "the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party." (Code Civ. Proc., § 1294.2.)

CJ Berry contends it has a right to a stay under the arbitration agreement, and if the court's ruling stands, it will be forced to proceed litigating, in court, claims that overlap those presented by Browden in *Browden I* and for which CJ Berry contends it has the right to arbitrate. It argues the "stay denial threatens to obliterate the right to arbitrate" by forcing these overlapping claims to be litigated in court.

We agree that the portion of the trial court's order denying CJ Berry's request for a stay is reviewable on appeal. CJ Berry's related arbitration rights are substantially affected by that portion of the order. Moreover, other courts have held similarly. (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 655–656 [order lifting stay is reviewable on appeal from order declaring arbitration provisions are unenforceable]; *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 612, fn. 5 [stay order reviewable on appeal from order denying arbitration]; *Berman v. Renart Sportswear Corp.* (1963) 22 Cal.App.2d 385, 388 [same].)

### B.    The Parties' Contentions

CJ Berry contends, "The trial court should have severed the PAGA waiver, then applied what was left of the arbitration agreement to send Browden's individual PAGA

claims to arbitration and stay the nonindividual PAGA claims."  The argument lacks merit because, as we have concluded, none of Browden's PAGA claims are subject to arbitration.  Alternatively, CJ Berry argues, "[T]he trial court should have stayed *all* of the PAGA claims" because "Browden has asserted arbitrable Labor Code claims against CJ Berry" in *Browden I* and *Browden III*.

Browden defends the trial court's reasoning and determination with regard to the stay request, contending, among other things, the term "Non-Arbitrable Claims" used in section 21 of the DRP "likely refers to claims falling under the definition of 'Excluded Disputes,' " which only the court is empowered to determine.  He argues that the DRP "does not permit the trial court to determine whether a dispute is a 'Covered Dispute' as defined in Paragraph 3"—it only permits the trial court to determine whether a claim is an "Excluded Dispute."  Thus, he contends, under CJ Berry's interpretation, the stay provision in the agreement is unworkable because a court is not permitted to determine whether a specific claim is a "Covered Dispute"—a determination that would be necessary under CJ Berry's interpretation for the court to order a stay.  However, if "Non-Arbitrable Claims" refers to "Excluded Disputes," Browden contends the trial court may make the determination, rendering the stay language workable.

### C.    Analysis

Ordinarily, "[a] trial court's decision whether to stay an action at law when a controversy has been ordered to arbitration is reviewed for an abuse of discretion." (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547.)  However, to the extent our review of the trial court's order denying CJ Berry's stay request requires us to interpret the DRP, or to interpret a statute, our review is de novo.  (*Leenay v. Superior Court* (2022) 81 Cal.App.5th 553, 562 ["the interpretation of a statute and its application to undisputed facts … presents a question of law that we review de novo"]; *Vianna v. Doctor's Management Co.* (1994) 27 Cal.App.4th 1186, 1189 [where the evidence is without conflict, interpretation of contract is reviewed de novo].)

26.

We begin our analysis by noting that the trial court was not presented with any evidence that Browden's claims in *Browden I* and *Browden III* were ordered to arbitration. CJ Berry did present evidence to the court, however, that it had moved to compel arbitration of the claims in *Browden I*. In its opening brief, CJ Berry said it "expects a ruling any time." CJ Berry acknowledges that the briefing in support of that motion to compel " 'was complete on August 26, 2024.' " However, as of the date CJ Berry filed its reply brief on appeal on November 12, 2025 (nearly 15 months later), the motion to compel arbitration was still pending. CJ Berry further argues the trial court "acknowledged the arbitrability of Browden's individual wage and hour claims filed in *Browden I*."

Oral argument in this matter was held on February 4, 2026. At that time, we were advised that the federal district court still had yet to decide CJ Berry's motion to compel arbitration in *Browden I*. On February 13, 2026, we were notified by CJ Berry's counsel that the district court had ordered the claims in *Browden I* to arbitration. A copy of the district court's order granting the motion to compel arbitration was included with the notification from counsel.

With regard to *Browden III*, there is no evidence in the record that a motion to compel arbitration has been filed.[11] CJ Berry contends, "The claims raised in *Browden III* are the same sort of claims that have already been compelled to arbitration under the same DRP" in *Bergeron v. Berry Petroleum Company, LLC* (E.D. Cal. Jan. 21, 2025, No. 1:24-cv-00503-CDB) 2025 U.S.Dist. Lexis 10652 (*Bergeron*). However, CJ Berry provides no discussion of the alleged similarities of claims in *Browden III* and *Bergeron*, and we are unable to confirm from the information provided to us that the claims raised in *Bergeron* are sufficiently similar to those raised in *Browden III*. Notably,

---

[11] CJ Berry states in its reply brief on appeal, "The issue of Covered Dispute status has not yet been raised in *Browden III* because the parties agreed to a stay pending a ruling on CJ Berry's motion to compel arbitration in *Browden I*."

in *Bergeron*, the plaintiff did not address the stay issue in its briefing. (*Bergeron, supra*, 2025 WL 252583, at p. *6.) For these reasons, we do not find the comparison to *Bergeron* helpful.

CJ Berry relies on that portion of section 21 of the DRP that reads:

"In the event that a Party asserts any claims that are deemed not arbitrable by federal law or a court of competent jurisdiction ('Non-Arbitral Claims') while at the same time asserting claims against the other Party that are Covered Disputes subject to the DRP, the Parties consent to and agree that the litigation of the Non-Arbitrable Claims in any state or federal judicial forum shall be stayed pending resolution of the Covered Disputes that are otherwise subject to the DRP."

In denying CJ Berry's request for a stay, the trial court wrote: "The Court's the [*sic*] severance of the DRP's wholesale waiver of PAGA claims is not 'deeming' those claims as 'non-arbitrable' within the terms of the DRP. The Court has held that the DRP waiver is invalid and unenforceable. Therefore, this sentence is inapplicable to these circumstances.… [CJ Berry's] argument therefore fails. [¶] [CJ Berry] asserts the FAA requires a stay; but this contention is based on the PAGA claims being found to be 'Non-Arbitrable claims' .… As stated above, these are not 'Non-Arbitrable' claims; they are claims subject to an invalid and unenforceable waiver. This argument also fails." The court did not explain why it believes claims subject to an invalid and unenforceable waiver cannot also be Non-Arbitrable Claims.

"The rules of contract interpretation employed under the FAA are the same as those used under the CAA. For example, under the FAA, courts interpret arbitration agreements using the plain meaning rule." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 176.) " ' "[T]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] … 'The words of a contract are to be understood in their ordinary and popular sense.' " ' " (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 219, first bracketed insertion added.)

A claim is considered "Non-Arbitrable" under the DRP if it is "deemed not arbitrable by … a court of competent jurisdiction." "A court of competent jurisdiction is a court with the power to adjudicate the case before it." (*Lightfoot v. Cendant Mortg. Corp.* (2017) 580 U.S. 82, 91 [137 S.Ct. 553, 560, 196 L.Ed.2d 493].) In this matter, the superior court has the power to adjudicate Browden's PAGA claims and is a court of competent jurisdiction. It has ruled that Browden's PAGA claims are not subject to an arbitration agreement and that the only place for the claims to be heard is in court. A plain reading of the definition of "Non-Arbitrable Claims" compels us to conclude that Browden's PAGA claims meet that definition.[12] We have already concluded, as did the trial court, that there are overlapping issues presented in *Browden I* and the present case. Thus, if the claims in *Browden I* are subject to arbitration, then the present litigation should be stayed under the language of section 21 of the DRP.

The question of whether the claims asserted in *Browden I* are arbitrable has now been decided by the federal district court. Accordingly, we conclude the litigation must be stayed during the arbitration of those claims.[13]

---

[12] We reject Browden's suggestion that we should interpret the defined term "Non-Arbitrable Claims" to mean "Excluded Disputes." Although "Excluded Disputes," as defined in the DRP, would almost certainly fall within the definition of "Non-Arbitrable Claims," there is no justification to limit the latter term to only claims enumerated under the definition of "Excluded Disputes." If the parties had intended these two definitions to be the same, they would have adopted a single term to reference them.

[13] Prior to receiving notice that the federal district court in *Browden I* had granted CJ Berry's motion to compel arbitration, a draft opinion in this matter was circulating among this court's panel members for final approval. It was then our opinion that the instant litigation should be stayed while the motion to compel arbitration in *Browden I* was pending (see Code Civ. Proc., § 1281.4) and, in the event the motion was granted, that the stay continue during the arbitration process.

We did not, and do not, draw similar conclusions with regard to *Browden III*. As mentioned, no arbitration, and no motion to compel arbitration, were pending in that matter at the time of the parties' appellate briefing. Moreover, the claims at issue in *Browden III* do not appear to overlap those in the present case. Accordingly, we find no abuse of discretion in the trial court denying the stay on the basis of claims filed in *Browden III*. This opinion is without prejudice to either party seeking a further stay in this matter should the claims in *Browden III* be

29.

**DISPOSITION**

We affirm the trial court's order to the extent it ruled Browden's individual and nonindividual PAGA claims are not subject to arbitration. We reverse the order to the extent it denied CJ Berry's request for a stay. We remand with instructions that the court vacate that portion of its April 30, 2025 order denying CJ Berry's requests for a stay and enter a new and different order granting a stay in this matter pending completion of arbitration proceedings in *Browden I*.

In the interests of justice, costs on appeal are awarded to Browden. (Cal. Rules of Court, rule 8.278(a)(3), (5).)


HILL, P. J.

WE CONCUR:


MEEHAN, J.


HARRELL, J.

---

sent to arbitration, or should any party file a motion to compel arbitration of those claims. We express no opinion on the merits of any such future application for a stay.